Per Curiam.
 

 Booth,
 
 Chief Justice.
 

 By the law of this State, it is the duty of the master to support his slave. If the slave becomes unhealthy, decrepit, blind, lame or maimed, and incapable of getting his livelihood; or if manumitted while in that condition, or under the age of ten years; or if above the age of thirty-five years at the time of the manumission, he afterwards becomes unable to support himself, the master is liable for his maintenance and support; and the trustees of the poor may maintain an action against him for the expenses incurred by the county for such maintenance and support. And in case of the master's death before suit brought, such action may be maintained against his executors and administrators, as in case of any other personal demand against the deceased. The duty to support the slave, after the decease of the master, follows the real and personal estate in the hands of the heirs, executors and administrators; and they are ¡liable for such support, to the value of the real and personal assets’ |of the deceased received by them. A slave being personal property [vests in the executors and administrators. If he has become a charge [upon the county after the master’s death, resort must be had, in the irst place, to the personal estate; but if there be none, or if it has leen exhausted in the payment of the debts, then to the real estate if the deceased, in the hands of his heirs, against whom, both upon irinciple, and from the true spirit and meaning of our acts of assem-ily referred to in the argument, an action may be sustained for the
 
 *326
 
 expense of maintaining the
 
 slave, and a recovery had to the
 
 value of the land descended. But in the present case it is contended, that the heirs may severally shift this liability from themselves by conveying away their respective shares of the real estate; and that the purchaser becomes liable to the extent of his interest in the real estate of the ancestor, to pay or contribute to the payment of the expense incurred for the maintenance of the ancestor’s slave; or in other words, that the liability of a deceased master’s estate for the maintenance of his decripit slave, is a lien upon his lands in the hands of a bona fide purchaser from the heirs for a valuable consideration, without notice. To sustain this doctrine, there must be some positive statutory enactment, or some clear and inflexible rule of law to that effect. The only acts of assembly on this subject are those referred to in the argument. (1
 
 Del. Laws
 
 436,
 
 sec.
 
 2; 2
 
 ib.
 
 885-6,
 
 secs.
 
 3, 5, 6;
 
 Dig.
 
 414-16, &c.) By the act first referred to, if the master by will or otherwise, set his slaves free, he or his executors or administrators, were required at the next Court of Quarter Sessions,to enter into recognizance with sureties, to indemnify the county from any charge which such slave might be to the county, in case of his being sick, or otherwise rendered incapable of supporting himself; and until such recognizance was given, the slave was not entitled to his freedom. By the act in 2d vol, 885, &c., the slave was declared free without such security having been given; but nothing in the act was to be construed to discharge the estate of the master from supporting a slave incapable of getting his livelihood. By the act of February, 1819,
 
 (Digest
 
 416,
 
 sec.
 
 6,) the slave might be manumitted without the master’ giving such security to indemnify the county; but if the slave, at the lime of the manumission, was under the age often years, or above the age of thirty-five years, or unhealthy, or otherwise incapable of getting his livelihood, the master, his heirs, executors, administrators orassigns, were declared liable and chargeable for the maintenance of such slave. Suppose a master, after having entered into a recognizance according to the provisions of the! act first referred to, had. aliened his lands to a bona fide purchaser! before any proceedings or judgment upon such recognizance; orl if after the master’s death, his heirs had so aliened them, such pur-l chaser would, under the decisions of our courts, have taken and held! the lands discharged from the recognizance; because being a recog-l nizance with a collateral
 
 condition,
 
 and not for the payment
 
 of mol
 
 ney absolutely, according to the judgment of the Court of Errors!
 
 *327
 
 and Appeals, in the case of
 
 The State for use of Ball vs. Jaquett,
 
 cited in 2
 
 Harr. Rep.
 
 466, it was not a lien upon lands from its caption; a lien being created only by a judgment obtained upon such recognizance. When, therefore, the subsequent acts of assembly dispensed with the security by recognizance, and declared that the master’s estate, without such security being given, should be chargeable with the support of a decrepit slave, it cannot reasonably be supposed to have been intended, that the mere liability to support the slave should be a better security to the county than a recognizance; that such lia-bilitjf should itself constitute a lien upon the master’s real estate in the hands of a bona fide purchaser, who had no notice of such lien, no means of knowing it, no place to which resort could be had to ascertain it; when the recognizance itself, being an obligation of record, acknowledged in open court, and of which a purchaser could at any time obtain information, did not constitute such a lien; and under which no lien upon the lands could be created, but by a judgment obtained in a suit upon such recognizance. It .was argued by the plaintiff’s counsel, that the act of 1819, in making the master, his heirs, executors, administrators or assigns, liable for the maintenance of the slave, clearly intended by using the word
 
 “assigns,”
 
 to embrace the case of a purchaser from the heirs of the real estate of the master; that such purchaser being an assignee of the real estate, the term
 
 assigns
 
 applied to him, and that the lands in his possession I could be followed for the maintenance of the slave. But it is not material to the decision of the question submitted to us, to inquire whether the term
 
 “assigns”
 
 does or does not refer to such purchaser. It is sufficient to remark, that the present case does not come within Ithe provisions of the act of February, 1819. The object of that act lis to indemnify the county, where the master manumits his slave unifier ten, or above the age of thirty-five years. In this case, the slave [never was manumitted. He was retained by the administrators and [heirs of the master; and supported by them for nineteen years after the Imaster’s death, and until the conveyance to the defendant. Upon iris refusal to contribute to the expense of maintaining the slave, ■Thomas Howard and Lewis West, administrators of the deceased inaster, and each holding one-third of his real and personal estate, Ihe former as an heir, and the latter in right of his wife, another heir, ■dace the decrepit slave in the poor house of Sussex county, and bind Jhemselves to the trustees of the poor, to pay their proportion of the ixpense of his maintenance. Upon this, the trustees seek to recover
 
 *328
 
 of the defendant, a proportion of such expense; instead of resorting to those heirs who received one-third of the real and personal estate of the deceased master, and conveyed their third of such real estate to the defendant in this case; for which they received full compensation. Upon no principle, could such a case be brought within the act of 1819; even supposing an assignee of the real estate could in any case be made liable for the slave’s support. For the reasons before stated, we should strongly incline against such a construction of the act of 1819, if any other meaning can be attached to the word “assigns,” as used in that act.
 

 But the plaintiffs also contend, that as the lands of a deceased person are bound for the payment of his debts and may be taken in execution, although the heir may have sold them to a bona fide purchaser, they are equally bound, upon the same principle, for the support of the slave of a deceased master. But before the lands of a deceased person can in such case, be taken in execution, a judgment must be obtained for a debt or demand due from or outstanding against the ancestor in his lifetime. The heir cannot take and hold the land discharged from such debts or demands; and therefore, can- I not by his alienation, place a purchaser in a better situation than he i himself stood. The present suit is not for a debt or demand due from, or outstanding against Richard Howard in his lifetime, but for a claim upon a cause of action arising against his heirs, nineteen I years after his decease. By the common law, if the heir, before ac-l tion brought against him upon the bond of his ancestor, in which thel heir was bound, aliened the lands descended to him, the obligee could! not follow the lands in the possession of a bona fide purchaser, but! was without remedy at law; although in equity the heir was respon-l sible for the value of the land aliened. No argument then can bel derived from the principles of the common law, as was contended! by the plaintiff’s counsel, to make a bona fide purchaser from anl heir pay, or contribute to, the expense of maintaining a slave, fori which the heirs, having received real assets from the deceased, are liable.
 

 The policy of our law is to avoid secret liens upon lands, and tc free, as far as possible, the alienation of real estate from embarrass-! ment. Hence deeds of conveyance, mortgages, judgments, recogni-l zances and charges against lands, created by last will and testament! all appear upon record, to which purchasers can Readily have access! But notwithstanding the anxiety of the law upon this subject,-real
 
 *329
 
 estate is already too much entrammelled; and it is unwise to increase the difficulties attending its transfer to purchasers. Upon the whole of this case, therefore, it is our opinion that the defendant, Henry F. Hall, is not bound to pay or contribute any part of the expense of keeping or maintaining the aforesaid slave Anthony; and that judgment be rendered for the defendant, with costs.
 

 Cullen,
 
 for plaintiffs.
 

 Houston,
 
 for defendant.